**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EVAN WILES,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:21-0979** |
| **v.** | : | **(JUDGE MANNION)** |
| **K. STEVENS, *et al*.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

## I. BACKGROUND

Plaintiff, Evan Wiles, an inmate confined at the State Correctional Institution, Coal Township, ("SCI-Coal Township"), Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). He complains of events which occurred at his prior place of confinement, the Huntingdon State Correctional Institution, ("SCI-Huntingdon"). Id. The named Defendants are the following SCI-Huntingdon Correctional Officers: K. Stevens, Chris Foor, Cook, English and John Doe. Id. Plaintiff seeks damages and injunctive relief, for alleged violations of his "Freedom of Expression and Due Process Clauses of the First Amendment to the United States Constitution," when Defendants allegedly retaliated against him and harassed him for "filing grievances and lawsuits." Id. Specifically, Plaintiff

claims that Defendants subjected Plaintiff to unnecessary cell searches, damaged his personal property during the searches, confiscated his legal property and verbally harassed Plaintiff. Id.

Presently before the Court is the Defendants' motion for summary judgment. (Doc. 26). The motion is ripe for disposition. For the reasons that follow, the Court will grant Defendants' motion for summary judgment.


II.    **SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every

element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.  See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused

from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## III.  STATEMENT OF UNDISPUTED FACTS[1]

On March 14, 2019, Plaintiff Evan Wiles was incarcerated at SCI-Huntingdon. (Doc. 27-2 at 2, Cell History).

On March 14, 2019, Defendants Foor and Cook executed an Investigative Cell Search of Plaintiff's cell in accordance with DOC policy. (Doc. 1 at ¶23). Defendants English and Stevens did not participate in the search of Plaintiff's cell on March 14, 2019. Id. Plaintiff alleges that Foor

---

[1] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party]...as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. Id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts. (Doc. 27). Plaintiff did not file a response to Defendants' statement of facts in compliance with M.D. Pa. L.R. 56.1 or a statement of material facts to support his own motion for summary judgment. Thus, the Court deems the facts set forth by Defendants to be undisputed. See M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

confiscated twenty-one documents, not one of which was a Section 1983 Complaint. (Doc. 27-3 at 6). The documents were confiscated because they contained details of an elaborate scheme to coerce false testimony from other inmates in Plaintiff's favor. Id. Specifically, in several documents, Plaintiff asked people to "recant" their original statements and, in several others, he instructed the recipients to tell a specific "version of the truth." Id. Following their confiscation, the documents were sent to the Philadelphia District Attorney Office to determine whether, or not, additional criminal charges were appropriate. Id.

On an unspecified date before the March 14, 2019 cell search, Plaintiff claims to have filed a grievance against Defendant Foor, alleging that he fabricated the details of a misconduct report. (Doc. 27-4 at 2, Wiles Deposition at 15:19–16:5). Plaintiff alleges that Foor confiscated the documents from his cell on March 14, 2019, in retaliation for this grievance. (Id. at 37:3–37:13). Plaintiffs Grievance history reveals that the most recent grievance, filed prior to March 14, 2019, was Grievance No. 789989, filed on March 6, 2019, regarding the resolution of the copies of photos that are scanned by Smart Communications and delivered to the inmate. (Doc. 27-1 at 2, Doc. 1 at 14). Prior to the March 6, 2019 grievance, Plaintiff's most recent grievance was filed in December, 2018. Id.

- 6 -

Moreover, prior to the cell search on March 14, 2019, Plaintiff did not file an inmate grievance or civil lawsuit against Defendant Cook. (Doc. 27-4 at 2, Wiles Deposition at 41:7-25, 42:1-2.)

On March 21, 2019, Plaintiff filed Inmate Grievance No. 794990 regarding the March 14, 2019 cell search. (Doc. 27-3 at 7). Plaintiff alleges that Defendant Foor confiscated his legal property and made a threat that he was not going to return legal documents to him. Id.

On April 23, 2019, Grievance No. 794990 was denied as follows:

> You have alleged that on 3/14/19, "officer Kyler and other correctional officers rummaged through my property." You allege that CO Foor then issued you Confiscated Items Receipt (CIR)#160590, for "18 pieces of paper." You allege CO Foor then stated, "I see you are trying to sue me." You allege that roughly 30 documents were confiscated, including your 1983 Complaint. You allege that later that evening you received CIR #172246, which 'verified' additional documents were removed from your property and you allege that the documents CO Foor removed from your cell contained a complaint you filed against CO Foor. For relief you have sought to have the items confiscated in CIR#160590, CIR#172246 and your 1983 Complaint returned to you.

> I have reviewed the 21 confiscated documents, which are in my possession, from CIR#172264 (3 documents) and CIR#160590 (18 documents). The documents were confiscated in accordance with policy, during an Investigative Cell Search, which was also conducted in accordance policy. Officers were not "rummaging" through your property, as you have alleged. The confiscated documents are not a 1983 Complaint against CO Foor, as you have falsely alleged. The documents contained an elaborate scheme, in which, you appear to be preparing to coerce false testimony from witnesses, who you hope to perjure themselves,

- 7 -

on your behalf. In several documents, you ask people to "recant" their original statements and, in several others, you have instructed the recipients to tell a specific "version of the truth". The confiscated documents appear to be evidence of criminal activity. None appears to be legitimate legal work.

I have interviewed CO Kyler, CO Foor and CO Cook. CO Kyler and CO Foor both stated that they confiscated items from you, during an Investigative Cell Search on March 14, 2019. CO Kyler stated that he prepared a DC-154A, Confiscated Items Report, and DC-436 for the items he confiscated. CO Kyler denied taking any additional items from your cell. CO Foor stated that he prepared a DC-154A, Confiscated Items Receipt, and a DC-436 for the items he confiscated. CO Foor denied confiscating any additional items from your cell and specifically denied confiscating any documents pertaining to himself. CO Cook denied confiscating any documents from you and denied witnessing CO Foor confiscating any complaints against himself.

The confiscated documents will be forwarded to the Philadelphia County District Attorney to determine their legitimacy and to determine whether, or not, additional criminal charges are appropriate. A 1983 Complaint was not confiscated and, therefore, cannot be returned to you.

You have misrepresented the facts about how your cell was searched and have mendaciously described the documents which were confiscated; therefore, I find the allegations you make lack any basis in fact. Your grievance is denied. All original confiscated documents will be maintained in the Security Office until the conclusion of all grievance and legal proceedings unless subpoenaed by a proper authority.

(Doc. 27-3 at 6, Initial Review Response). Plaintiff's Grievance No. 794990 was appealed to Final Review by the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), where it was denied on July 15, 2019, for Plaintiff's failure to provide any evidence to substantiate his claim that CO

Foor or any other officers confiscated a 1983 Complaint. (Doc. 27-3 at 1, Final Appeal Decision).

On June 5, 2019, Plaintiff filed Grievance No. 807752 regarding Security Captain Stevens' response that, the March 14, 2019 video requested in Plaintiff's June 1, 2019 Inmate Request to Staff Member is no longer available. (Doc. 27-6 at 2). Prior to requesting the video be preserved, Plaintiff did not file any inmate grievance or civil lawsuit against Defendant Stevens. (Ex. 4, Wiles' Deposition at 40:1-25, 41:1-6).

On July 20, 2019 Plaintiff filed Grievance No. 814700 regarding Foor and Cook's alleged commentary to him about his lawsuit. (Doc. 27-5 at 2).

On August 19, 2019, Plaintiff's Grievance No. 814700 was denied as follows:

> In Grievance #814700, Inmates Wiles claims on 7/15/19 at approximately 2:30 p.m., he was walking on B Block heading toward the B Block school area when Officers Foor and Cook made inappropriate comments toward him regarding a lawsuit. Wiles reports that Officer Foor said, "There goes that little bitch, right there." Officer Cook said "Who?" Officer Foor replied, "Wiles!" Wiles also claims as the officer walked by him, Officer Foor said, "How's your lawsuit?" Wiles claims he did not respond, kept walking, and looked back noticing that both C.O. Foor and Cook were looking over their shoulders directly at him. Wiles claims officers abide by their own set of rules, blatantly disregard the D.O.C.'s Code of Ethics, and tend to go without fear of any repercussions.
>
> In response to this grievance, Officer Foor and Cook were interviewed and CCTV video footage from 7/15/19 for the low

- 9 -

side of B Block was reviewed. Officer Foor denies making any of the statements claimed by Inmate Wiles. Officer Cook denied making any of these statements, as well. CCTV video shows that at 2:30:47 P.M. on 7/15/19 Wiles passes by Officers Foor and Cook on B Block. The video shows that Wiles and the officers glance at each other for less than one second as they pass by and the officers keep walking in their direction while Wiles walks in his direction. The video shows that Wiles looks over his right shoulder towards the officer at 2:31:07, but the officers are not looking back at him. The video also shows that Wiles turns around facing the officer and slowly walks backwards looking in the direction of the officers from 2:31:11 until 2:31:16. The video shows the officer are out of sight at this time as they had already turned the corner at the front of B Block. The video refutes Wiles' claim that the officers were looking over their shoulders directly at him when Wiles looked back at the officer. In fact, other than the quick glance when they passed by, the video does not show the officers looking at Wiles. It is also difficult to see where the alleged dialogue would have taken place.

Based on the above review, Grievance #814700 and any relief is being denied.

(Doc. 1 at 45, Initial Review Response). Plaintiff appealed Grievance No. 814700 to Final Review before the SOIGA, who denied Plaintiff's appeal for Plaintiff's failure to "provide any evidence to substantiate [his] claims." (Doc. 1 at 51, Final Appeal Decision).

On August 21, 2019, Plaintiff filed Grievance No. 822394, requesting that C.O. Foor "cease his retaliatory and intimidating tactics." (Doc. 1 at 52).

On September 26, 2019, Grievance No. 822394 was denied as follows:

In Grievance #822394, Inmate Wiles claims that someone shouted, "Wiles, only rats file grievances." He states he looked out his cell door and quickly realized it was C.O. Foor screaming

up to him from the second tier. In the same grievance, Wiles goes on to claim that several days later he endured harassing comments made by Foor when he showed up at his cell door shortly after another officer conducted the 4:00 pm count. Wiles claims that this time Foor said "Keep your shit packed because we're going to bury you in the hole." Wiles claims the alleged harassment is causing him anxiety and paranoia. He wishes to have Foor cease the perceived retaliatory and intimidating tactics. In response to this grievance, Officer Foor was interviewed. Foor denies making any of the alleged statements. Foor is confused as to why Wiles continues to submit grievances against him. Foor stated that he has no problem with Wiles and believes this may stem from a property search conducted months ago. Foor assured this writer that he has no issues with Wiles and has not and will not perform his job duties in a retaliatory or intimidating manner. For these reasons, the grievance and requested relief are denied.

(Doc. 1 at 54, Initial Review Response). The denial of Plaintiff's Grievance No. 822394 was upheld by the Facility Manager on November 4, 2019, (Doc. 1 at 56) and subsequently denied by the SOIGA. (Doc. 27-1 at 2).

On or about February 6, 2020, Plaintiff was transferred from SCI-Huntingdon to SCI-Coal Township. (Doc. 1 at ¶¶ 44–47). Around February 26, 2020, there were statewide emergency lockdowns, which resulted in cell searches. (Id. at ¶49). During the February 26, 2020 cell search, English searched Plaintiff and placed him in handcuffs. (Doc. 27-4 at 2, Wiles' Deposition at 33:1-5). The seven other inmates in Plaintiff's dorm-style cell were also searched and placed in handcuffs. (Id. at 30:8–30:12, 33:7–33:9). Plaintiff alleges that English made comments to him about his transfer to

Coal-Township and handcuffed him so tightly that his hands hurt. (Doc. 1 at ¶57; Ex. 4, Wiles Deposition at 29:13-17, 33:1-25). Plaintiff described the pain as mild numbness, which lasted thirty minutes, and pins and needles, which lasted only the day. (Id. at 33:15–33:21). Plaintiff claims that English engaged in this behavior in retaliation for grievances Plaintiff previously filed against Foor. (Id. 42:3–42:14). Prior to the February 26, 2020 search, Plaintiff had not filed any inmate grievances or civil lawsuits against Defendant English. (Id. at 42:3-24). Defendants Cook, Stevens, and Foor did not participate in the February 26, 2020 search. (Id. at 35:7-18).

Plaintiff files the instant action in which he claims that all of Defendants' actions were "in retaliation to Plaintiff filing grievances and lawsuits and contributed to and proximately caused Plaintiff's injuries." (Doc. 1). For relief, Plaintiff seeks compensatory and punitive damages as well as injunctive relief. Id.

## IV. DISCUSSION

Plaintiff's constitutional claims are brought under 42 U.S.C. §1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

> thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. §1983.

"To establish a claim under 42 U.S.C. §1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.' " Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)).

## A. First Amendment Retaliation Claims

Plaintiff alleges that all Defendants actions "were in retaliation to Plaintiff filing grievances and lawsuits and contributed to and proximately caused Plaintiff's injuries." (Doc. 1).

An inmate stating a retaliation claim pursuant to the First Amendment bears the burden of satisfying three elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate

- 13 -

that he "suffered some 'adverse action' at the hands of prison officials." Id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." Id. (quoting Suppon v. Dadonna, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Id. at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 199 n. 10 (3d Cir. 1996). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. If the prison

officials can make this showing, it defeats the retaliation claim. See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

It is well-settled that inmates engage in protected activity when they file grievances and lawsuits. See Anderson v. Davila, 125 F.3d 148, 161-62 (3d Cir. 1997); see also Watson, 834 F.3d at 422-23; Mearin v. Vidonish, 450 F. App'x 100, 102 (3d Cir. 2011). Once it is established that an inmate was engaged in a protected activity, the Court must then consider whether the alleged adverse action is actionable under §1983. To be actionable under §1983, the adverse action "need not be great" but "must be more than *de minimis*." McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotation marks omitted). Moreover, "[t]he cumulative impact of retaliatory acts may become actionable even though the actions would be *de minimis* if considered in isolation." Brennan v. Norton, 350 F.3d 399, 422 n.17 (3d Cir. 2003).

Here, Plaintiff alleges that he was subjected to a March 14, 2019 cell search which culminated in a false misconduct. While cell searches are a routine part of prison life, Hudson v. Palmer, 468 U.S. 517, 526-27, it does not mean that searches that constitute "calculated harassment unrelated to prison needs" are permissible. Id. at 530. The Third Circuit has held, in a non-precedential opinion, that a retaliatory search and seizure may be

sufficient to satisfy the adverse action prong of a retaliation clam. See Humphrey v. Sec'y Pa. Dep't of Corr., 712 F. App'x 122, 124-25 (3d Cir. 2017) (citing Bell v. Johnson, 308 F.3d 594, 604 (6th Cir. 2002)). However, before determining that Plaintiff's cell search constituted adverse action, the Court must first determine whether Plaintiff was involved in a protected activity prior to the alleged adverse action. The record before this Court establishes that Plaintiff's most recent protected activity, prior to the cell search, was a March 6, 2019 grievance regarding the resolution of the photos that are sent to Smart Communications and scanned prior to delivery to the inmate. (Doc. 27-1 at 2, Doc. 1 at 14).

First, there is no evidence that Defendant Foor was named in Plaintiff's March 6, 2019 grievance or that he was even aware of Wiles' prior grievance. Nothing in the record before the Court would permit a finding that Defendant Foor was aware of any prior grievance filed by Wiles.[2] See Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 196-97 (3d Cir. 2015) (noting that a plaintiff "cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's

---

[2] Plaintiff, himself, admits that his protected activity of filing an inmate grievance naming Foor occurred after the March 14, 2019 cell search, when he filed Grievance No. 794990, naming Foor. (Doc. 34, brief in opposition at 3).

protected conduct at the time they acted"); Whitehead v. Rozum, No. 09-220J, 2012 WL 4078422, at *6 (W.D. Pa. Aug. 14, 2012) (concluding that the inmate-plaintiff had failed to demonstrate that corrections officers were "aware of his filing of ... grievances such as to establish any motivating factor"), *Report and Recommendation adopted*, 2012 WL 4086717 (W.D. Pa. Sept. 17, 2012). Any speculation on Wiles' part is insufficient to defeat summary judgment. See Wharton v. Danberg, 854 F.3d 234, 244 (3d Cir. 2017).

Second, Defendant Foor argues that temporal proximity of more than a few days is insufficient to establish causation. (Doc. 29 at 19). The alleged retaliatory cell search occurred on March 14, 2019, over a week after Wiles filed his March 6, 2019 inmate grievance. For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (quoting Krouse, 126 F.3d at 503). A temporal proximity of a few weeks or months is insufficient to establish causation. See DeFranco v. Wolfe, 387 F. App'x 147, 154-58 (3d Cir. 2010) (concluding that two months temporal proximity between the inmate-plaintiff's protected activity and the alleged retaliatory cell transfer was insufficient); Killen v. N.W. Human Servs., Inc.,

No. 06-4100, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation).

Plaintiff's argument in his brief in opposition fares no better. Specifically, Plaintiff states in opposition that on May 5, 2017, Defendant Foor issued Plaintiff Misconduct No. C066066, a "drug-related" misconduct, which was "an unfounded claim" and resulted in Plaintiff engaging in protected activity of appealing the misconduct and "beg[inning] to prepare a §1983 civil suit against Defendant Foor." (Doc. 34 at 3). Plaintiff's misconduct, however, was issued over two years prior to the March 14, 2019 cell such. Thus, an approximate two-year time-period is insufficient to establish a causal connection. See DeFranco v. Wolfe, 387 F. App'x 147 (3d Cir. 2010) (two-month period insufficient to establish causation); Conklin v. Warrington Twp., 2009 WL 1227950, 3-4 (M.D. Pa. April 30, 2009) (2-month period insufficient to establish causation).

Thus, "[w]here the temporal proximity is not 'unusually suggestive,' [the Court must] ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'" Leboon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)). Wiles' speculation that

Defendant Foor searched his cell and confiscated his property solely to retaliate against him for filing a grievance and where Defendant Foor was not named in the filing, is simply insufficient to create a genuine issue of material fact to survive summary judgment.

Moreover, the record reveals that Defendant Foor would have confiscated the documents regardless of Plaintiff's protected conduct, as the cell search was conducted in accordance with DOC policy and the confiscated papers revealed an elaborate scheme in which Plaintiff appeared to coerce false testimony from witnesses on his behalf. Given that such a scheme is criminal, confiscating the papers for further investigation was warranted and furthered a penological objective.

The Supreme Court has recognized that "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). As such, deference is afforded to Foor's conduct as it served legitimate penological interests of maintaining prison order and security, thus defeating Plaintiff's *prima facie* case for retaliation. See Rauser, 341 F.3d at 334. As there is no genuine issue of

material fact, Defendant Foor is entitled to judgment in his favor as a matter of law. Fed. R. Civ. P. 56(a).

As to remaining Defendants, Stevens and English, the record reveals that Plaintiff never filed any inmate grievance or civil lawsuit against Stevens prior to his June 5, 2019 grievance naming Stevens for failing to preserve video, nor against English prior to the February 26, 2020 cell search. Thus, Plaintiff fails to establish his burden of establishing a *prima facie* case required for a retaliation claim brought pursuant to Section 1983. See Thomas v. Independence. Twp., 463 F.3d 285, 296 (3d Cir. 2006).

Nor can Plaintiff establish a causal connection between Stevens' and English's actions and Plaintiff's alleged protected conduct asserted against Defendant Foor. It is undisputed that Plaintiff did not file any inmate grievance or civil litigation prior to their respective actions with the video preservation and cell search. (Doc. 27 at ¶¶18, 28.) Any alleged protected conduct Plaintiff allegedly engaged in, which named Defendant Foor, prior to the June 2019 preservation of video or February 26, 2020 cell search has no connection to either Stevens or English and cannot serve as their alleged retaliatory animus. Murray v. Smithbower, No 1:17-cv-127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021) (quoting Victor v. Lawler, 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 201), *aff'd*, 565 F. App'x

126 (3d Cir. 2014)) (courts have "consistently rejected retaliation claims 'against one defendant based on [protected activity] against another [individual]' for lack of retaliatory motive"); <u>see also</u> Royster v. Beard, 308 F. App'x 576, 597 (3d Cir. 2009) (affirming the district court's grant of summary judgment in favor of a defendant on the inmate-plaintiff's claim that he was retaliated against by an individual who was not the target of his protected activity). Wiles, therefore, cannot maintain his retaliation claims against Defendants Stevens and, or English.

Accordingly, the Court will grant summary judgment to Defendants Foor, Stevens and English with respect to Wiles' retaliation claims.[3]

---

[3] In addition to granting Defendants summary judgment on the merits of Plaintiff's retaliation claims, the Court also finds merit to Defendants' argument that Plaintiff procedurally defaulted any request for monetary compensation because he did not seek the same within the Inmate Grievance System. It is well-established that an inmate's failure to request monetary relief within his initial inmate grievance is later barred from asserting any claim for monetary damages in federal court. <u>See</u> Wright v. Sauers, 729 F. App'x 225, 227 (3d Cir. 2018). The record establishes that Plaintiff failed to seek monetary compensation under inmate grievance numbers 794990, 814700, and 807752. (Doc. 27-3, 27-5, 27-6). Consequently, he is now barred from seeking monetary relief in the instant action.

Moreover, to the extent that Plaintiff requests for relief, an "immediate transfer to SCI-Phoenix and/or SCI-Chester," well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. <u>See</u> Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montayne v. Haymes, 427 U.S. 236, 243 (1976); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)

B. **Personal Involvement**

Under §1983, individual liability may be imposed only if the state actor played an "affirmative part" in the alleged misconduct. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)).

Here, the record shows that Cook did not take part in the March 14, 2019 cell search, as evidenced by the inmate grievance and initial review response to Grievance No 794990, which lacks any allegation of personal involvement by Defendant Cook. Additionally, Plaintiff testified that he had not filed any civil litigation or inmate grievance against Cook prior to the March 14, 2019 cell search. With no protected conduct asserted against Cook, Cook could not have held the retaliatory animus against Plaintiff on the day of the cell search. See Victor, 2010 WL 5014555, at *5; see also Evans, 2009 WL 5064490, at *22; Royster, 308 F. App'x at 579 (3d Cir. 2009); Horan, 2016 WL 5030468, at *6.

To the extent that Plaintiff claims that while "Defendant Cook may not have held retaliatory animus against Plaintiff during the March 14, 2019 cell search initially, his statements and action following the March 14, 2019 cell search (some of them preserved on video, no less) are evidence enough to show a history of ongoing antagonism", (Doc. 34 at 5), his reference to the

alleged July 15, 2019 exchange between he, Foor and Cook, is insufficient to establish a causal connection. <u>See</u> DeFranco v. Wolfe, 387 F. App'x 147 (3d Cir. 2010) (two-month period insufficient to establish causation); Conklin v. Warrington Twp., 2009 WL 1227950, 3-4 (M.D. Pa. April 30, 2009) (2-month period insufficient to establish causation). Moreover, the record establishes that Plaintiff's account of the events of July 15, 2019 was refuted by the video tape evidence from that day. Thus, Defendant Cook is entitled to summary judgment as to Plaintiff's retaliation claim.

### C. <u>Harassment</u>

Conduct like verbal harassment, taunting, and use of profanity, without any injury or threat thereof, is insufficient to implicate a constitutional infringement under either the Eighth or Fourteenth Amendment. <u>See</u> Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) (explaining that "verbal harassment does not give rise to a constitutional violation enforceable under §1983"); <u>see</u> <u>also</u> Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) (collecting cases); Manning v. Flock, No. 1:11-cv-0293, 2012 WL 1078227, at *12 (M.D. Pa. Mar. 30, 2012) (collecting cases); Graham v. Main, No. 10-cv-5027(SRC), 2011 WL 2412998, at *24-25 (D.N.J. June 9, 2011) ("Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under §1983,

regardless of whether the inmate is a pretrial detainee or sentenced prisoner.") (collecting cases); Mohamed v. Aviles, No. 06-cv-4794 (FSH), 2007 WL 923506, at *5 (D.N.J. Mar. 26, 2007) (collecting cases).

Plaintiff filed Grievance No. 822394 claiming that on August 20, 2019, Foor shouted, "Wiles, only rats file grievances," and to "Keep your shit packed because we're going to bury you in the hole." (Doc. 1 at 52).

Wiles' complaints of harassment and racially derogatory remarks, which, if true, are unprofessional and inexcusable, do not implicate a constitutional infringement. See, e.g., Washington v. Rozich, 734 F. App'x 798, 801 (3d Cir. 2018); Rieco v. Moran, 633 F. App'x 76, 79 (3d Cir. 2015). Thus, while the Court in no way condones the alleged unprofessional conduct of Defendants, such verbal harassment, even with racist overtones, has repeatedly been held not to amount to a constitutional violation under the Eighth or Fourteenth Amendment.[4]

## D. Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with the summons and copy of the complaint:

If a defendant is not served within 90 days after the complaint is filed, the court —on motion or on its own after notice to the

---

[4] Because we find no merit to Plaintiff's harassment claim, Plaintiff's motion to compel the video from August 20, 2019 (Doc. 32) will be denied.

plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Plaintiff names a John Doe Defendant in his complaint that was filed on June 1, 2021. (Doc. 1). To date, this Defendant has not been identified nor served with the complaint. The Court must engage in a two-step process in determining whether to dismiss the unidentified, non-served Defendant or grant Wiles additional time to effect service. "First, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995). Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules. MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995). In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." Id. Although prejudice is a factor to be considered, the absence of prejudice to the

opposing party alone does not constitute good cause to excuse late service. Id.

In the present matter, Wiles failed to establish good cause. The expiration of the ninety-day time period set forth in Rule 4(m) has expired and Wiles has not provided any reasonable explanation for his failure to adhere to the requirements of Rule 4.

If a plaintiff cannot show good cause for his failure to serve the defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time. Petrucelli, 46 F.3d at 1305; see also Fed. R. Civ. P. 4(m). It is Wiles' responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion.

In light of Wiles' lack of good faith effort to identify and serve the John Doe Defendant, the Court concludes that dismissal is appropriate under the present circumstances. Accordingly, the unidentified, non-served Defendant will be dismissed from this action.

## V.  CONCLUSION

For the reasons set forth above, the Court will grant the Defendants' motion for summary judgment.

A separate Order shall issue.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: November 2, 2023**
21-0979-01